United States District Court
Eastern District of Texas

**FILED**
MAR 14 2018
Clerk, U.S. District Court
Texas Eastern

) Craig Cunningham
) Plaintiff, Pro-se
)
) v.  CIVIL ACTION NO. 4:17-cv-00894
)
) Professional Education Institute, Inc., United Marketing Group, LLC and EES Global, LLC, and John/Jane Does 1-5
) Defendants.

### Plaintiff's Amended Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 3000 Custer Road, ste 270-206, Plano, Tx 75075

2. Profesional Education Institute, Inc., is an Illinois corporation that can be served via registered agent William Doran, 333 W. Wacker Dr., ste 1900, Chicago, IL 60606 or Corporate officer, Michael Hussey 7020 High Grove Burr Ridge, IL 60527

3. United Marketing Group, LLC is an Illinois Corporation that can be served via registered agent Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703 or corporate officer EES Global, LLC at 1815 S. Meyers Rd., Ste 300, Oakbrook Terrace, IL 60181

4. EES Global, LLC is an Illinois coporation and can be served at Illinois Corporation service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703 or at 1815 S. Meyers Rd., Ste 300, Oakbrook Terrace, IL 60181

1

5. John/Jane Does 1-5 are currently unknown persons or entities that are also liable for the calls in question.

6. The Plaintiff notes that he has settled with the other remaining defendants and is filing a seperate motion to dismiss them from the case. In light of that, the Plaintiff will remove them from the complaint and focus on the remaining defendants.

## Jurisdiction

7. Jurisdiction of this court arises as the acts happened in this county

8. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

## FACTUAL ALLEGATIONS

9. In 2017, the Plaintiff recieved multiple unwanted phone calls from call center agents working in the Philippines offering a variety of travel club and savings programs and financial education services.

10. These programs were pitched as a free trial sample of the product as long as the Plaintiff covered the shipping and handling cost the initial order, but there would be a significantly larger charge if the Plaintiff didn't cancel within a short period of time, which is a "negative option marketing" where a consumer must opt out of future charges or they will be charged for a

program. For example, there may be a small initial charge of $4.95 with a larger followup charge of $79.99.

11. Each and every call was placed by an automated telephone dialing system and the agents failed to state the name of the entity on whose behalf the calls were being placed. Each call as placed to the Plaintiff's cell phone without consent from the Plaintiff or any sort of emergency purpose. The agents were not trained on the use of an internal do-not-call list and the entities that placed the calls failed to maintain an internal do-not-call list.

12. On 12/5/2017, the Plaintiff recieved a call from 866-852-2688 to 615-331-7262. After a 4 second delay of dead air, a pre-recorded message started to play which said *"Congratulations, you have an unclaimed reward in the amount of $100. Please press 1 now for all the exciting details. Again, thats a $100 reward we have reserved-"*

13. At this point, the Plaintiff pressed 1 to identify the caller. There was a beep, another 3-4 second pause of dead air, after which the Plaintiff was connected with a Filipino call center employee. The agent already knew the Plaintiff's name, and asked if she was speaking with Craig Cunningham. At no point was the Plaintiff ever sent a $100 gift card.

14. On 11/18/2017, the Plaintiff received a call from 866-852-2688, the exact same number that called on 12/5/2017, to 615-331-7262 which was initiated by an automated telephone dialing system and contained a pre-recorded message. The Plaintiff called this number back and was offered a product by Professional education properties called Financial Freedom

Experts and a travel club program which was associated with the call back number of 888-859-2051 and the website www.thetravelandentertainmentclub.com and thebuyersedge.com According to the terms and conditions on the website, UMG owns both thebuyersedge and thetravelandentertainmentclub.com[1] Additionally, the Plaintiff recieved in the mail two product brochures from buyersedge and thetravelandentertainmentclub.com.

15. According to the Plaintiff's cell phone records, there were additional calls on November 28th and November 30th to 615-331-7262 from 866-852-2688 at a minimum. The Plaintiff received multiple other similar calls at a rate of roughly 2-3 calls per month going back the past year totaling over 20 such calls. Absent discovery, the identification of any 3rd party telemarketers, calling records from the defendants, and all caller ID numbers used, it is not clear at this point the total number of calls or how to apportion them to each defendant. It is clear, however that the Plaintiff recieved at least 4 calls from 866-852-2688 to 615-331-7262 for the purpose of selling products by the named defendants above.

16. Based on the pre-recorded message, beeps, and dead air, the Plaintiff determined that the calls were placed using an automated telephone dialing system. Additionally, the previous lawsuits against Professional Education Institute, Inc., were all initiated using an automated telephone dialing system, so the Plaintiff has knowledge that these defendants have

---

[1] https://www.thetravelandentertainmentclub.com/terms_and_conditions.php and https://www.thebuyersedgeclub.com/terms_and_conditions.php

used automated telephone dialing systems in the past and are likely continuing to do so.

17. Each and every call was placed by or for the benefit of Professional Education Institute, Inc., United Marketing Group, LLC EES Global, LLC or in the alternative, directly by Professional Education Institute or United Marketing Group/EES Global.

18. Multiple products were pitched on each call, for example one call pitched a travel club and financial education services.

19. The Plaintiff is still in the process of researching and obtaining call records and the total number of calls in question, but has identified at least 5-25 calls in play.

### Professional Education Institute, Inc

20. The Plaintiff has been solicited multiple times for products offered by Professional Education Institute, and this is the 3rd time the Plaintiff has sued them for illegal telemarketing calls. Apparently 2 lawsuits in Federal court were not sufficient to dissuade defendant PEI from engaging in illegal robocalls. The Plaintiff was solicited to by Wellness Experts, some health training course offered by Defendant PEI.

### United Marketing Group, LLC and EES Global, LLC,

21. United Marketing Group, LLC and managing entity EES Global, LLC are two Illinois corporations that have directed several calls to the Plaintiff's

cell phone 615-331-7262 in an illegal robocalling campaign offering travel services and various discount programs. The Plaintiff is unsure of the total calls from United Marketing Group at this point absent discovery, but each and every call was initiated using an automated telephone dialing system and several contained pre-recorded messages about a free gift card the Plaintiff could obtain if he participated in this trial program. At no point was any gift card received. The products and services offered included a savings program and travel club that are owned/operated by United Marketing Group, LLC.

### Theories of Liability

22. As these parties stand to profit and benefit from the Plaintiff's enrollment in these programs, they are vicariously liable for the calls as a seller, as defined by the TCPA, even if they didn't directly place the calls to the Plaintiff.

23. These phone calls violated the TCPA in two ways, first by placing multiple automated telephone calls to the Plaintiff's cell phone in violation of 47 USC 227(b), and second by not conforming to the requirements of 47 USC 227(c)(5) and the FCC's rulemaking authority under 47 CFR 64.1200(d), which requires the defendants to have a written policy for maintaining a do-not-call list, failure to train agents and personnel engaged in telemarketing on the use of the do-not-call list, and the failure to identify the party placing the call or the entity for which the call is being placed. Each of the Defendants are jointly liable to the Plaintiff in the amount of

$3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5). Additionally, each product offered by each company represents a new cause of action entitling the Plaintiff to $3,000 per call per defendant.

24. The Plaintiff alleges direct, vicarious, joint, and several liability for the listed corporations. Additionally, the officers of the corporations have a direct role in the illegal conduct, authorizing it and ratifying the illegal telephone calls.

25. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.

26. Obviously given 2 lawsuits before from the Plaintiff against defendant PEI, they should have been aware that robocalling was being done on their behalf and directed at the Plaintiff, and the Plaintiff did not want any further calls.

27. Although the agents did not properly state the names of the corporations they were calling on behalf of, they did state the specific products they were selling and websites the entities used. Based on this information, the Plaintiff was able to determine that the corporate defendants were involved. Additionally, the Plaintiff recieved emails from the defendants on 12/21/2017 confirming that he would not be charged any further.[2] This

---

[2] See Exhibits A and B

occured after the calls and the emails are specific to the products mentioned in the calls.

## ACTUAL AUTHORITY

28. Defendants PEI, UMG, and EES contracted formally with a 3rd party telemarketer to initiated calls using an automated telephone dialing system to sell the products of the aforementioned defendants. Defendants PEI, UMG, and EES desired that their 3rd party telemarketers initiate calls to individuals, including the Plaintiff to sell their products. The 3rd party telemarketers were acting as the formal agents of UMG, EES, and PEI.

29. In making these calls, the 3rd party telemarketers were performing in accodance with a contract and at the request of defendants PEI, UMG, and EES to make robocalls to sell products to consumers.

## APPARENT AUTHORITY

30. The 3rd party telemarketers in this case with or without a formal contract believed and were directed to act on behalf of Defendants UMG, EES, and PEI to make robocalls. There is simply no other reasonable explaination for why they would incur the expense and time to make robocalls unless it was being done with the belief they were acting on behalf of Defendants UMG, EES, and PEI.

## RATIFICATION

31. Defendants PEI, UMG, and EES affirmed by making payments and celebrating the sales and robocalling efforts of their 3rd party telemarketers in placing calls to the consumers, including the Plaintiff. By continuing to

8

do business with telemarketers after being sued by the Plaintiff twice, Defendant PEI ratified the conduct of the telemarketers. Defendants UMG and EES also knew their telemarketers were breaking the law and similarly continued to accept the sales and pay comissions to their agents that were violating the TCPA.

32. The Plaintiff need not peirce the corporate veil to hold a corporate manager liable. It is merely required that the corporate manager turn a blind eye or fail to take reasonable steps to stop the illegal conduct from happening. In this case, Defendants PEI, UMG, and EES knew that illegal robocalls were being placed on their behalf and refused to take any action to stop them from happening. Had the defendants stopped using illegal telemarketers, the Plaintiff would have not been called by them.

## Actual Damages

33. The Plaintiff has suffered actual damages in the form of the trial enrollment fees charged.
34. Additionally, the Plaintiff has suffered annoyance, frustruation, anger, loss of enjoyment of his cell phone use, reduced battery life, reduced data plan, of his cell phone due to the calls.

## CAUSES OF ACTION:

## COUNT I

## Violations of the Telephone Consumer Protection Act (TCPA)

35. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

36. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by using an autoated telephone dialing system to place calls to the Plaintiff's cell phone in violation of 47 USC 227(b). This entitles the Plaintiff to recover $1500 per call.

## CAUSES OF ACTION:

## COUNT II

**Violations of the Telephone Consumer Protection Act (TCPA)**

37. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

38. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by 47 USC 227(c)(5) by way of 47 CFR 64.1200(d) and failed to comply with the requirements to maintain and train employees on the use of a do-not-call list.

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $3000 for each phone call for each defendant mentioned in the call

C. Actual damages as determined at trial

    D. Pre-judgment interest from the date of the phone calls

    E. Attorney's fees for bringing this action; and

    F. Costs of bringing this action; and

    G. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted 3/14/2018

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

5543 Edmondson Pike, ste 248, Nashville, TN 37211

United States District Court
Eastern District of Texas

) Craig Cunningham
) Plaintiff, Pro-se
)
) v.                        CIVIL ACTION NO. 4:17-cv-00894
)
) Professional Education Institute, Inc., United Marketing Group, LLC and EES Global, LLC, and John/Jane Does 1-5
) Defendants.

### Plaintiff's Certificate of Service

I hereby certify that a true copy of the foregoing was mailed to Lisa Messner, MacMurray and Shuster 6530 West Campus Oval, ste 210, New Albany, OH 43054.

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

5543 Edmondson Pike, ste 248, Nashville, TN 37211

3/14/2018

12